■ ROSA VELAZQUEZ, Respondent, v WATER TAXI, INC., et al., Appellants. —Order, Supreme Court, Bronx County, entered November 10, 1977, denying defendants' motion for summary judgment to dismiss the complaint, reversed, on the law, without costs or disbursements, summary judgment

granted to defendants, and the complaint dismissed. Plaintiff was a passenger in a taxicab owned by one of the corporate defendants and operated by the defendant Campbell, an employee of the other corporate defendant. She sustained injuries when the taxi collided with a car operated by a hit-and-run driver. Plaintiff commenced arbitration proceedings under the uninsured motorist provision of defendants' insurance policy. She also commenced this action against defendants as tort-feasors. Both the notice to arbitrate and summons claimed $1,000,000 as the relief sought for the personal injuries sustained by plaintiff. The arbitrator awarded $2,500 for noneconomic loss, since "No issue as to economic loss was submitted to this arbitration." Plaintiff moved to confirm the award which was eventually reduced to judgment. Defendants made payment and the judgment was satisfied. They subsequently moved in this action for summary judgment "on the ground that plaintiff has received judgment for the injury claimed and said judgment has been satisfied". Special Term denied the motion, finding that plaintiff's submission of her uninsured motorist claim to arbitration "is not an election of remedy barring her right to proceed at law on her other cause of action against the defendants". This appeal resulted. Special Term misperceived the issue. What is involved is not an election of remedies but rather the application of *res judicata* and the release effect on other tort-feasors *in pari delicto* brought about by the satisfaction of a judgment against one of the tort-feasors. It is clear from the notice of intention to arbitrate that plaintiff sought $1,000,000, notwithstanding the fact that the limits of the uninsured motorist coverage were $10,000, without any reservation of rights or limitation of recovery requested based on an apportionment of the tort-feasors' liability. There was a general submission of the controversy, and any award made is thus conclusive and final on the issues submitted. *(Ott v Schroeppel,* 5 NY 482; *New York Lbr. & Wood Working Co. v Schnieder,* 119 NY 475; *Matter of Garnett v Kassover,* 8 AD2d 631.)* We also find it significant that in awarding damages for plaintiff's injuries, the arbitrator obviously did not feel constrained by the $10,000 limit available under the uninsured motorist endorsement, since he awarded damages representing only 25% of that amount. Plaintiff's position would be more tenable if the submission were limited to only those damages attributable to the hit-and-run tort-feasor, and the arbitrator had awarded $10,000. This award was subsequently judically confirmed on plaintiff's application. Thus the arbitrator's determination was *res judicata* as to the value of petitioner's injuries. *(Parillo v Nataro,* 34 Misc 2d 800.)* Furthermore, once the award was reduced to judgment and satisfied, defendants, as joint tort-feasors, were released from liability. *(Rossbach v Rosenblum,* 260 App Div 206; *Sarine v American Lumbermen's Mut. Cas. Co. of Ill.,* 258 App Div 653.)* In the face of a satisfied judgment, plaintiff could not proceed to obtain another judgment for the same injury arising out of the same tort. (See *Goines v Pennsylvania R. R. Co.,* 6 AD2d 531.) Nor can plaintiff avail herself of CPLR 3002 (subd [a]), to proceed against other parties, since that section applies only where a judgment is not fully satisfied. It should be noted that plaintiff commenced this action first and could have proceeded to judgment against these defendants while preserving her rights under the uninsured motorist provision. In fact, defendants did attempt to stay the arbitration on the ground of the pendency of this action. But she chose instead to submit the controversy to the arbitrator without reservation and to take that proceeding to a judgment which has been satisfied. Concur— Murphy, P. J., Markewich and Sullivan, JJ.; Sandler, J., dissents in a memorandum and Lupiano, J., concurs in the dissent in a separate memorandum as follows:

Sandler, J. (dissenting). The opinion of the court fairly states the controlling facts. The issues presented are two. The first is whether by proceeding to arbitration under the uninsured motorist's provision of the defendant's insurance policy, plaintiff somehow, without regard to the result of arbitration, lost the right to pursue her lawsuit against the defendant in court. As to that, the law is quite clearly established that she did not. (See *Brink v Killeen,* 48 AD2d 823; *Matter of O'Brien [Aetna Cas. & Sur. Co.],* 33 AD2d 1085; *Matter of Alston [Amalgamated Mut. Cas. Co.],* 53 Misc 2d 390.) *Matter of Alston (supra)* involved a factual situation identical with that presented here. The sole distinction was that the insurance company there sought to stay the arbitration on the ground that it would require them to litigate in two separate forums. The court's analysis is very much to the point (p 395): "There are two separate actions here, one involving the negligence of Alexandrea and the other the negligence of Joyner. If it is a burden on the petitioner to defend those two actions in two forums this is not the fault of the respondent. Rather it is caused by the insurance policy issued by the petitioner. The respondent must take the policy the way she finds it. She has no choice. There is no way in which she can arbitrate the question of Alexandrea's negligence, nor any way in which she can seek redress for Joyner's negligence against Amalgamated without proceeding in arbitration unless Amalgamated voluntarily waives its rights to insist on arbitration. This it has not done. * * * By requiring her to split her claims petitioner gets two chances to defeat her. It is possible that it will be able to convince the trier of the facts in the Civil Court action that Joyner was solely negligent and, on the other hand, convince the arbitrator that Alexandrea was solely negligent and thus escape liability altogether." A similar conclusion was reached in *Brink v Killeen (supra),* in which a plaintiff was awarded $10,000 in arbitration under an uninsured motorist's endorsement. The check she received in payment of the award, and which she and her counsel endorsed, contained a statement that the check was "for full and final settlement of any and all claims". Construing that language as not intended to constitute a release of plaintiff's claims against other tort-feasors, it was held that the payment of the award did not bar the lawsuit. I do not understand the opinion of this court to depart from this body of authority. However, the suggestion that plaintiff should have sought to adjourn the arbitration until the completion of her lawsuit, however long that might be, implies an awkward and unwarranted restriction on the rights of those who suffer injuries under the circumstances present here. I am aware of nothing in the language of the statute that supports such a limitation. The second question presented is whether the recovery by plaintiff of the sum awarded her by the arbitrator as noneconomic loss invokes the principle of *res judicata* with regard to the court action. The court's conclusion rests upon a finding that the arbitrator had determined that the amount awarded represented the full amount of the noneconomic damages plaintiff sustained. However, the arbitrator did not so state and nothing in the record permits us to so conclude as a matter of law. The possibility simply cannot be excluded that the arbitrator awarded plaintiff only that part of the damages suffered that he attributed to the negligence of the uninsured motorist. If that were so, the effect of the court's decision will be to deny plaintiff the opportunity to receive full recovery for the injuries she sustained and to do so without a scintilla of support in subdivision 2-a of section 167 of the Insurance Law or the purposes that section was intended to serve. Surely, the fairer and more sensible approach

was that followed in *Brink v Killeen (supra)*, in which it was held that the amount recovered in arbitration did not preclude the lawsuit but would mitigate whatever damages were determined in the court action. For the foregoing reasons, the order below, denying defendant's motion to dismiss the complaint, should be affirmed.

Lupiano, J. (concurring in dissent). While fully concurring in the analysis set forth by my dissenting brother, Justice Sandler, I would add the following observations. The mere fact that plaintiff's notice to arbitrate under the uninsured motorists provisions of defendant Water Taxi, Inc.'s insurance policy, set forth her claim in the sum of $1,000,000, which is in excess of the prescribed $10,000 monetary limitation contained in that insurance contract, is not dispositive of the issues raised on this appeal. Because of this fact, so heavily relied upon by the majority, it is concluded that there was a *general* submission of the controversy. I do not agree. As aptly noted in the cogent reasoning set forth in *Matter of Alston (Amalgamated Mut. Cas. Co.)* (53 Misc 2d 390, 395): the insurance contract "contemplates a situation such as the instant one where the claimant, an additional insured under the uninsured motorist provision of the liability policy issued * * * to * * * the named insured, would prosecute her rights against the named insured in one forum and also seek recovery from the insurer by reason of the uninsured joint tort-feasor's negligence in another forum." Parenthetically, in *Matter of Shumate (MVAIC)* (50 Misc 2d 31, 35-37), the court stated: "It is to be noted that the provisions of the indorsement . . . differ substantially from the provisions of an insurance liability policy. In an insurance liability policy the insured is indemnified against financial loss to himself arising out of the claims of others by reason of his (the insured's) negligence, whereas, under the section [Insurance Law, § 167] the insurer agrees to pay * * * the damages that the insured [or any person in his automobile] shall be entitled to recover from an owner of an uninsured motor vehicle, an unidentified motor vehicle, etc. The payment to be made pursuant to this policy is not based upon the liability of the insured, but is rather based upon the future liability . . . of a then unknown third party. * * * Unfortunately, the indorsement required pursuant to subdivision 2-a of section 167, has frequently and mistakenly been viewed as a liability policy. It is not under any circumstances a policy insuring the owner thereof against liability for damages to third parties arising out of his own negligence. The rights of a passenger in an automobile which is covered by an MVAIC indorsement are not rights against the insured, but rights which afford protection against damages from third parties. * * * Thus, it is evident that there is a major difference between the insurance agreement contained in the liability policy and the indemnification indorsement. The former protects the insured owner for any fault on his part which results in injuries to others, whereas the indemnification indorsement protects * * * any person in his automobile so as to compensate them for any injuries sustained by the negligent operation of an 'uninsured motor vehicle'". Viewed against the policy considerations underlying the Legislature's promulgation of section 167 of the Insurance Law and the fact that errors of law or fact committed by an arbitrator are not judicially reviewable, to hold that an "error" in the notice to arbitrate, to wit, the claiming of damages in excess of the monetary limitation embraceable within the endorsement giving rise to such arbitration, of itself bars any further attempt on the part of claimant to recover over and above such monetary limitation, exalts form over substance and serves only to penalize the claimant, the real party in interest, for a scrivener's error on the part of counsel. The critical issue is

not the amount of damages claimed in the notice to arbitrate, but the validity of the majority's statement, under the circumstances herein, that, in the form of a satisfied judgment obtained in the arbitration proceeding, plaintiff could not proceed to obtain another judgment for the same injury arising out of the same tort. In this connection, the factual pattern and rationale gleaned from a reading of *Matter of Powers (Continental Ins. Co.)* (29 AD2d 1041) is most helpful. In that case, the insurer sought to stay arbitration brought by claimants under the endorsement on the ground that the claimants were also suing in an action at law the parties whose vehicle was struck by an unidentified car and propelled into the claimant's vehicle. In response to the insurer's contention that it " 'was not the legislative intent, nor was it the intent of the insurance contract to afford protection * * * as long as there was an identified and insured tort-feasor' ", the appellate court declared: "the statute clearly contemplates an *independent recovery, within the present monetary limitations,* on account of the negligent operation of the unidentified automobile (Insurance Law, § 167, subd. 2-a)" (emphasis supplied). Pertinently, the Court of Appeals denied leave to appeal in this matter *(Matter of Powers [Continental Ins. Co.],* 22 NY2d 645). A claimant seeking a recovery within the ambit of subdivision 2-a of section 167 of the Insurance Law is limited by the statutory terms to a recovery "not exceeding a maximum amount * * * of ten thousand dollars * * * on account of injury to * * * one person, in any one accident, and the maximum amount * * * subject to such limit for any one person so injured or killed, of twenty thousand dollars * * * on account of injury to, or death of, more than one person in any one accident". Accordingly, it is clear that the statute by its very terms never contemplated full recovery by a claimant in each and every case with regard to the total injuries sustained. The *sui generis* nature of the uninsured motorists endorsement and the litigation surrounding same is self-evident (see Laufer, Embattled Victims of the Uninsured, 19 Buffalo L Rev 471). Also of noteworthy relevance is the policy expressed in *Dole v Dow Chem. Co.* (30 NY2d 143 of fair apportionment among joint tort-feasors. The most significant *Dole*-related development is the recent enactment of the comparative negligence law (CPLR 1401-1404, 1411). Viewing these evolutionary legal concepts in conjunction with the policy considerations underlying the uninsured motorists endorsement as mandated by statute, lends further pragmatic credence to the conclusion that the statute (Insurance Law, § 167, subd 2-a) "clearly contemplates an independent recovery, within the prescribed monetary limitations, on account of the negligent operation of the unidentified automobile, even though there is also an identified and insured tort-feasor [citation omitted]" *(Matter of O'Brien [Aetna Cas. & Sur. Co.],* 33 AD2d 1085). Further, it has been recognized that a claimant's right to arbitration under the endorsement is not conditioned upon his prior prosecution of an action against the insured motorist (see *Matter of State-Wide Ins. Co. v Lang,* 30 AD2d 974, 975). The application of the statutory scheme which envisions a claimant seeking vindication of a claim in two different forums—an arbitration tribunal and a court of law, the *sui generis* nature of the uninsured motorists endorsement and the litigation involving same, and the recent adoption in New York of a comparative negligence doctrine—all combine to impel the conclusion that, under the circumstances herein, the reduction of the arbitration award to judgment and consequent satisfaction of that judgment may not serve to frustrate the plaintiffs' instant action. If the rationale of the majority is correct, then a claimant, otherwise entitled to the expeditious vindication of his claim against an uninsured motorist in arbitration under

the limited monetary mandate of the endorsement, would run the risk of foreclosing himself forever from recovering damages for substantial injuries sustained from another tort-feasor, the insured tort-feasor, in an action at law. This is a result to be avoided. Accordingly, the order denying defendants' motion to dismiss the complaint should be affirmed.